The next case for argument is 24-1890, VL Collective v. Unified Patents. Mr. Barron. Good morning. Good morning, Your Honors. May it please the Court. Brian Barron for Appellant Video Labs. The Board's decision should be reversed for three independent reasons. First, the Board made a dispositive claim construction error by reading part of the patent's express definition of content-related, that's the phrase within the respective data out of the claims. Second, the Board made another dispositive claim construction error by allowing the claimed assignment rule to use timestamps, even though that was a key distinction over the prior art. And third, Unified's petition failed to develop any argument that Sonohar's alleged first and second data segments are content-related. It was a legal error for the Board to allow Unified to fill that gap in its petition for the first time in its reply. I'll start with the within claim construction issue. Everybody agrees and has agreed throughout this case that the term content-related is expressly defined in the patent. Can I ask you, sorry to interrupt, but just a threshold question. My understanding was that even though the Board didn't agree with your construction, it used your construction when it was analyzing the prior art. Am I wrong about that? I don't think that's correct, Your Honor. In the final written decision, the Board expressly deleted within the respective data file from the construction it was using. That's at Appendix 18, Note 5. And then in the rehearing decision, I think the Board tried to clean up that mistake by saying it was putting within the respective data file back in, but where it ended up on the substance was exactly the same place. So I think it just changed an express claim construction omitting that term to an implicit claim construction effectively omitting it by giving it no meaning at all. That's your interpretation, but at least the Board said expressly it was evaluating the prior art of Sonohara, I think, under your construction. At least said it was doing that, right? Yes. Yes, Your Honor. But I think, you know, Google gets eco-factor even when the Board doesn't think it's engaging in claim construction. If what it's doing is establishing the scope of the patented subject matter, then it's doing claim construction. I think that's what happened here, and I think that's why both sides are— You have, right, available to you the sites where the Board discussed its application of what it thought was your construction. Can you just point me to that? So in the rehearing decision, I think it's the discussion from Appendix 54 to 59. And the Board's theory on—so on Appendix 55, the Board talks about how the meaning within Sonohara's two separate source files is imparted by the headers in the single file, which is, you know, essentially the same place the Board was in the final written decision. And then on pages 57 to 59, it talks about this idea that you can infer syntactical meaning. And I think an example might help understand what the Board's construction does and why it doesn't put any meaning within the source files. If you have a movie on a DVD in a single, unsegmented file, no data segments, no syntactical meaning, you copy that onto a computer, take the DVD out, don't do anything else with it. There's still no data segments on the DVD. Now you segment the file on the computer, and they're in order. The movie has a beginning, middle, and end, so you can give the segments syntactical meaning within the segmented file on the computer. Under the Board's and Unified's interpretation, you've now also given syntactical meaning to the data segments within the DVD. Even though you haven't changed anything about it, there are still no segments there. There's no file. There's nothing that tells a computer that anything has happened with the DVD. You plug it into a different computer, and that computer has no idea that there were ever segments at all, let alone that they have syntactical meaning within the file on the DVD. The Board's treatment of Sonohara's single file, which Sonohara's headers give that syntactical meaning, as then going back to the source files, just because we understand as humans how the source files became the single file, there's no actual defined relationship that's connecting those. If I understand your argument, are you saying that, in essence, the originating files need to contain data segments themselves? That's how I understood your blue brief argument. Am I misunderstanding that? I don't think the files necessarily need to contain data segments, but the content-related first data segments need to have syntactical meaning within the first data file, and the content-related second data segments need to have syntactical meaning within the second data file. I think, as a practical matter, that means that there are going to have to be segments defined with respect to that file. OK, so I thought your blue brief was saying the originating files, the source files, needed to have data segments. You're not saying that today. I think the requirement is syntactical meaning within the respective data files. You have to understand from this side's perspective, this is rather abstract. We're talking about content-related and syntactical meaning, and what I really need is just something concrete to focus on. We're focused on whether Sonohara's source files, the audio file and the video file, have certain things or lack certain things, and you're not saying that Sonohara's original source files need to have data segments. Is that right? That's right. I think it is helpful. So let's put that to the side. If that was an argument, then it's off the table. Now the next question is, do those originating files in Sonohara, do they need to have some syntactical meaning for the video content and the audio content, right? That's really the question. Not quite. I think everybody agrees they need to have syntactical meaning, but the board and Unified are saying, well, they have syntactical meaning within the single file, and that's good enough. What we're saying is that— I think to put a finer point on it, I think the board was saying, we know that the downstream file where everything gets combined together has syntactical meaning, has a header. And because it exists there, we can infer back upstream to the originating source files that they too would likewise have some kind of syntactical meaning up there too. That's my understanding of the finding. And I think that's where the board went wrong. Because you've got the segments in the single file, they're segments of—they came from the originating file, but there's nothing tying their syntactical meaning back to that original file as opposed to just having syntactical meaning in general. I think if you read it the board's way, within the respective data file doesn't need to be in the definition, because the segments, just by virtue of being in order, they have syntactical meaning, and you can just apply that back to a different file without any stored relationship telling the computer that that meaning exists within the originating file. Yeah, I don't want to spend too much time on this because you have other arguments, but when I read column four of your patent, 794, where the definition for content-related is, there's a lot of explanation of how, you know, there's a fragmentation module aside from the first data file, second data file, and then there's also something called a fragmentation description file, and the fragmentation description file, which is a separate file from the data files, seems to have a lot of the, what I'll call, header-type information. And so then that raises the question, well, what is it in the data files that has to have syntactical meaning? And then, you know, there's a sentence down around line, starting at line 49 of column four, by the first data segments, S1, is meant data segments of the first data file, D1, which have a content-related meaning for the first data file, D1, such as, for example, individual images in a video sequence or individual spoken words in an audio sequence. And so to me, that sentence suggests that when you have the video in sequence or the audio in sequence stored in the original data files, that's what we mean here in this patent by content-related meaning. So I think the key distinction here is that the fragmentation description files tell you where the segments are in the data files D1 and D2. Well, there are no data segments in the D1 data file, right? That happens later when you get to the fragmentation module, and then you chop up the data file into data segments. They're not physically separated yet, but they're defined and given meaning by the And there are lines of code identifying... Talking about this figure, right? Yes. What those are saying, in my rudimentary knowledge of computer code, is that it tells you at which byte a data segment begins and how many bytes it runs for. So it's identifying the beginning and end of each data segment, and it's doing that for file D1 in this case. So I think that is to Sonohara's header and track information, but Sonohara only ever does that for the combined file. It doesn't do it for the source files. Whereas here, there's a file identifying the segments and giving them meaning within file D1 and within file D2. If I might, just one more on this. The board says that Sonohara does actually teach this limitation with syntactical meaning under your construction. Our review of that reading of Sonohara is for substantial evidence. Is it not? That's correct, but I think the board is relying on its view of what within the respective data file requires or really doesn't require, and that issue is reviewed de novo. Okay. You said you had three points. At least pick the next most important and go for it. Yeah, maybe I'll just briefly address the assignment rule claim construction issue. The assignment rules... Can I just... I'm not going to use this against you, but I'm always confused in these cases. We have so many issues, different patents, different claims. If we were... Do you have to win on both of those, or are they completely different in terms of the impact they would have on the result here? I think any of our three issues were its reversal on all the claims the board found unpatentable, because the assignment rule limitation is in all the claims. The content-related limitation is in all the claims. Thank you. Okay, so assignment rule. Yeah. The assignment rules are really the core of the invention, and I think you could see that both throughout the specification and the prosecution history, and in particular, they are a departure from prior art techniques that relied heavily on timestamps or other exact... So what is... Is the issue all about timestamps, whether timestamps were required under the independent claim? I think the issue here is because the board made a finding that Sonohara relies on timestamps for any assignment rule there, so I don't think you need to decide what else assignment rules can't be. If they can't be timestamps, then the board's decision should be reversed. So I think one big problem is the question of forfeiture, because your argument below was trying to ask for an understanding of an assignment rule that excluded something called exact timing information. Now on appeal, you're... Although you make a nod to exact timing information, you're really focused on timestamps, excluding timestamps, and the question is whether that's a different argument than you made below. I saw the transcript from the patent board hearing where there was a big argument by your side that timestamps are not exact timing information. Those are two different things that have two different scopes of exclusion, and in fact, it's wrong to think of claim one, which would, in your view, exclude exact timing information. That would have different scope from the dependent claims, which specifically exclude timestamps. So first question is why is it permissible for you to pivot from one understanding of the claim with a certain scope of excluding exact timing information to now on appeal a different claim scope where now you're excluding something of a different scope, timestamps? Our position is that the claim scope has not changed. We continue to believe that exact timing information is the best way to describe what is carved out. We have maintained all along, the board recognizes this on Appendix 22. We set it on Appendix 1167. Timestamps are a subset of exact timing information. So exact timing information is broader, but because the board made a finding that Sonohara's assignment rule relies on timestamps, there's no need to decide that broader dispute about exact timing information. It's sufficient to decide timestamps. So that's the point we're trying to make. The board's decision narrowed the dispute. Our position as to what the claims mean has not changed. So you'd be perfectly fine if we only evaluate whether your original position that exact timing information is excluded, whether that's the correct construction or not. We don't have to worry about your refined position here. Is that fair? Well, I think that includes the question whether timestamps are included because timestamps are part of exact timing information. Right. But to the extent you've come up with a more reasonable claim construction here than the one you advocated at the board, if we see it that way, you're content with us just looking at your arguably slightly less reasonable position at the board, right? You're saying you only narrowed it because of you don't think we have to address, like you're doing it for our benefit. But if we don't think it's to our benefit, we should just go ahead and evaluate the construction you presented to the board. Is that correct? I think you can do that and I think it's exactly the same construction. Okay, we've exhausted our rebuttal. We'll restore some time. Let's hear from the other side. Thank you. Ms. Wu, good morning. Please proceed. May it please the court, Laura Wu on behalf of Unified Patents. I'll start with the content-related data segments limitation and their construction within the respective data file segment. The board applied VideoLabs' desired construction in the final written decision and the rehearing decision. And so because the board applied that construction, there is no longer a claim construction dispute and there's only a substantial evidence dispute before the court. The board's analysis at appendix 38 to 42 in the final written decision and appendix 55 to 59 in the rehearing decision cite more than substantial evidence from the Sonohar prior art reference and the expert declaration supporting the petition and the reply. What about the argument that they didn't really apply the proposed construction? They applied implicitly a different construction than what VL Collective was really arguing for? Yes, your honor. So that is not true. The board applied their construction and in the board's analysis, they repeatedly referred to syntactical meaning within the originating files. I am happy to go through the specific pages where the board cites the originating files, but the board's view was that it was applying syntactical meaning within the respective data file as in the originating file, which is exactly what VideoLabs was arguing for. So this has been a bit of a moving target for me, this issue in terms of what is the actual there is a lack of substantial evidence for the fact finding that you can infer back from file one's header information that the source files 11 and 12 also would have syntactical meaning information there? Yes, Judge Chen. And that is there is no longer a claim construction dispute because of their concessions in the gray brief that the originating files do not have to have data segments and the file that provides the syntactical meaning that defines the segments also does not have to be within the files. Because those issues have now been removed, all it is is whether or not there is substantial evidence as to whether there is syntactical meaning in the originating files. And here, the theory that the board found was that in the production of the file one, the system in Sonohara is looking at the originating files and is processing those originating files. It is taking that file and splitting it up into segments and then assigning the header information and the track identification to those originating files. And then that information is ultimately stored in the file one, in the header information with the data segments. But the syntactical meaning is the same in both the file one and the originating files because the originating files have to be processed in order to produce the file one. And again, that finding by the board is supported by substantial evidence. Can we talk about exonics for a little bit? Yes. Obviously, in exonics, we held that it is permissible for a petitioner in its reply brief to respond to a claim construction argument raised in the patent owner response, even though the petitioner didn't raise this very claim construction issue in its own petition. And I'm just wondering, do you think there's any limits to that, in which a petitioner never has to address any potential, maybe even super obvious claim construction matter in its petition, and it can just sit back and wait to see if the patent owner is going to raise it in its patent owner response? And only then will the petitioner need to address it in the reply? Are there no circumstances where it would be wrong and inappropriate to permit that kind of practice? I don't think there are no circumstances where the petitioner doesn't have to address the super obvious claim construction issues, but I don't think that's the case here. Why not? This is just lexicography out of the specification. I disagree that it is lexicography out of the specification, primarily because even in the preliminary response, video labs didn't even assert that that was the construction for the content-related data segments term. They proposed a different construction, what ultimately got referred to in the IPR as the preferred construction. So even in the preliminary response, they didn't believe that— They didn't cite the same passage for content-related? They cited that passage, but at appendix 984, they said that language cannot be adopted as the construction. But that's because they wanted to put an extra gloss on that very sentence. They wanted to, yes, they wanted to— Not that they were pivoting away from the sentence. They were just trying to offer more meaning to it. I think I respectfully disagree that they were trying to, you know, just only offer more meaning that I think they wanted to provide, you know, a different, more detailed, more narrow construction. But what I will say is here, the petitioner, Unified, did consider this definitional language, this definition in the specification. It didn't explicitly address that language in the petition, but it did consider it and presented a theory that was consistent with that language. And so when that issue arose in the IPR after the patent owner response, video labs showed that the theory presented in the petition also satisfied that additional language. And I think under axonics, that is entirely appropriate here. If there are no further questions on content-related data segments, I'll turn to the assignment rule construction. I can start with the forfeiture argument because that's what the court has spent most of its time on this morning. Video labs— I'd also cover where your friend landed. Yes. Yes, Your Honors. Are you using that? Yes. So just very briefly on the forfeiture argument, we stand by that video labs waived or forfeited its narrower construction of timestamps because that's not the argument they raised before the board. However, even on the merits, their construction is wrong. And that's because the independent claims cannot have meaning—or sorry, the dependent claims cannot have meaning if the independent claims are construed to exclude timestamps. But you know, our jurisprudence on claim differentiation is a bit mixed. I mean, it's not a definitive automatic claim differentiation. And in fact, in many cases when claim differentiation is raised, we'll say, yeah, but we use it less rather than more when we're confronted by it. I don't know. That's not statistically correct, but that's my sense of it. So beyond claim differentiation, what have you got? Yeah. So even beyond claim differentiation, the specification and the prosecution history does not disclaim an assignment rule that uses timestamps. There is an embodiment. There's one embodiment in the specification that mentions that the assignment rule doesn't use timestamps. But that embodiment and that discussion relates to a benefit of the assignment rule. It does not disclaim the use of timestamps in the assignment rule. And there is a part of the specification that discusses the use of timestamps even in the assignment rule. So the specification and the patent does not completely get rid of the use of timestamps entirely. And that is at column six, lines 43 to 49 of the specification. In that part of the specification, the patent is talking about how two data segments are assigned to each other and then output with the same timestamp. And that is very similar to what is going on in the Sonohara prior art reference, where you are assigning segments of image data and audio data with each other, and they have the same timestamp. Let's assume for the moment that the specification is not dispositive, so that the issue really boils down to the prosecution history. They clearly distinguished away these two references, Shin and Rosenow. How would you articulate what it is that they ended up surrendering through those two arguments to overcome those references? Obviously, it's your view that it's wrong to say that they disclaimed exact timing information or that they disclaimed timestamps. But they gave up something. So how would you articulate it? Can you say it to me in one sentence? They gave up X. Yes. What they gave up is that the prior art did not disclose a specific method of an assignment rule where you assign distinct segments of two data streams to each other. So it was a much narrower... Could you say that one more time? Yes. So the prior art did not disclose an assignment rule where you assign distinct segments of two data streams to one another. That's how the applicant distinguished the invention, the claims from the prior art. So the assignment rule talks about assigning segments of data from the audio stream to segments of data from a video stream. And so these segments are always going to be output with one another based on this assignment rule. And the prior art did not disclose that at all. In the Shin reference, the prior art only used timing information for synchronization. There was no assignment rule, none. There were no assignment of distinct segments from two different data streams to one another. It created some kind of reference time point and then assigned particular data segments to that reference time point. It was only looking at timestamps and just looking at the timestamps to synchronize. Okay. It sounds like you're saying maybe they gave up timestamps. No, no, no. They, well, so they distinguished between synchronization using only timestamps with synchronization where you assign segments to one another. So for example, audio segment one is always going to be output with audio segment two. Sorry. Video segment one is always going to be output with audio segment one. Audio segment two is always going to be output with video segment two. So there's always going to be a pair of segments that are output with one another in the claims. In the prior art, there was no assignment rule, none. No assignment rule. They were only looking at the timing information and just matching, trying to match the timing information so that the whole data stream lined up. And that was the same concept that they had. Something about time lag? Yes. So you could have video frames of data that may over time lead or lag, right? So there's going to be some sort of shifting in the frames. And when that shifting happens, you just repeat or skip the frames. But again, there was no strict defined assignment of the segments to one another. Effectively, with this assignment rule, the data streams never get out of sync because you're always outputting the same video and audio data together. And so that is what the applicant was distinguishing from the prior art reference. Again, there was no strict assignment of two segments in the data streams in the prior art. So if there are no further questions, unified respectfully ask the court to affirm the board's decision. Okay, Mr. Barron, we'll restore three minutes of rebuttal. Thank you, Your Honor. On the point we were just discussing about assignment rules, I'd encourage you to look at Shin's figure 6B. It's in the blue brief at 13. What Shin is doing is it identifies fixed times, timestamps, time A, B, C, and D. And those are times at which segments are supposed to be output. So in a just totally ordinary English sense, you could say that that's assigning segments to the timestamps. And then it uses the delta T to realign those segments. And what I haven't heard from unified and haven't seen in the briefs is any explanation of how that's any from how Sonohara uses time. Sonohara, as the board found in its discussion of claims 20 to 21, has preset output times for the segments, just like times A, B, C, and D in Shin's figure 6B. So I think what we disclaimed is at the very least what Sonohara is doing. And whether you want to call that exact timing information, I think it is really just a matter of semantics at this point. The prior art technique that we distinguished in essentially defining the term assignment rule that we were using for this patent, nobody's argued that that's a term that had some technical meaning in the art. There's no meaningful difference between those prior art techniques and Sonohara. On the exonics point briefly, we argued from our preliminary response at Appendix 983 that there's express lexicography. Unified agrees with that. Unified's expert agrees that there's express lexicography. Unified's expert said he thinks the patent's definition matches the ordinary meaning and that he applied it at the petition stage. And unified said it was doing an ordinary meaning at the petition stage, which according to its expert is the patent's definition. So this is not a new construction. It's the same construction everybody's been applying all along. The preferred construction that we advanced, what the board called I think fairly an additional gloss on the definition, was I think unified did have a right to respond to that. But the problem is that unified never said under any definition why the segments were content related. It describes, I believe on Appendix 119, I think the section runs from 118 to 123 or so, it describes why they're segments. It breaks out all the other claim terms and makes an argument for why they're satisfied. But there's nothing like we think these are content related because. That's never filled in and the board lacks the legal authority to allow unified to fill it in for the first time in reply. Thank you, Your Honors.